UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Bill M. Boots,

          Plaintiff,            Court File No. 17-cv-3923 (DWF/LIB)

v.

                                  **REPORT AND RECOMMENDATION**

Nathan Johnson, et al.

          Defendants.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 14], and Plaintiff's Motion for Additional Storage Bin, [Docket No. 23]. Briefing on the Motions was completed on December 3, 2018, and the Motions were taken under advisement thereafter.

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 14], be **GRANTED** and Plaintiff's Motion for Additional Storage Bin, [Docket No. 23], be **DENIED as moot**.

**I.     BACKGROUND AND STATEMENT OF ALLEGED FACTS[1]**

Plaintiff Bill M. Boots ("Plaintiff") is civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. (Compl., [Docket No. 1], 3).

On May 4, 2012, Plaintiff was involved in an incident with another MSOP civil committee, Terry R. Jackson. (Id. at 4-5). Jackson believed that Plaintiff was attempting to instigate a fight with Jackson, so Jackson threatened Plaintiff. (Id. at 5). It appears from the

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

Complaint that at some point, Plaintiff made allegations that Jackson sexually assaulted him; those allegations were actively investigated. (See, Id. at 14, 16-17).

On the afternoon of February 22, 2015, Jackson was being escorted through the facility at Moose Lake by Security Counselor Joshua Johnson.[2] (Id. at 6). As they passed a group room, Jackson noticed that Plaintiff was in the group room, and he stopped to stare at Plaintiff. (Id. at 9, 13). After taking Jackson to his destination, Security Counselor J. Johnson informed Security Counselor Nathan Johnson that Jackson had noticed Plaintiff in the group room. (Id. at 13). As a precaution, Security Counselor N. Johnson alerted the RAC coverage and A-Team. (Id. at 13).

Shortly thereafter, Security Counselor J. Johnson was again escorting Jackson through the facility. When they passed the same group room where Plaintiff was at the time, Security Counselor J. Johnson attempted to remain physically between Jackson and the group room. (Id. at 6-7). Jackson stopped at the meeting room door. (Id. at 13). When Security Counselor J. Johnson barred the door with his arm and told Jackson to move along, Jackson pushed Security Counselor J. Johnson's arm out of the way and forced his way into the group room. (Id. at 13-14). Jackson then began to punch, kick, and stomp on Plaintiff, while yelling that he was going to kill Plaintiff and that Plaintiff had "'better change his story.'" (Id. at 7, 13, 15-16).

Security Counselor J. Johnson "yelled [at Jackson] to stop," and Security Counselor Tom Snedker activated the Incident Command System. (Id. at 7). Security Counselor Lead Phil Olson, Security Counselor Nate Madsen, Security Counselor Jon Monsen, and Security Counselor Ben Zuk responded to the group room, where Security Counselors Zuk and Madsen saw Jackson on top of Plaintiff, who was lying on the floor; Jackson was hitting Plaintiff with a closed fist about the upper torso and head, while the Security Counselors ordered him to stop. (Id. at 7-9).

---

[2] Security Counselor Joshua Johnson is hereinafter referred to as "Security Counselor J. Johnson," to distinguish him from Security Counselor Nathan Johnson, who is referred to as "Security Counselor N. Johnson."

2

Security Counselor Lead Olson later reported that he saw Jackson "standing over client Boots who was curled up on the floor." (Id. at 11). Security Counselor Lead Olson and Security Counselor Zuk repeatedly directed Jackson to stop hitting Plaintiff. (Id. at 12). Finally, Jackson walked away from Plaintiff. (Id. at 15).

Security Counselors Madsen and Monsen asked Plaintiff if he was okay, but Plaintiff at first failed to respond to their questions. (Id. at 9, 12). Later, Plaintiff stated that Jackson had punched him in the face and kneed him in the body multiple times, but that Plaintiff did not remember much of what had happened. (Id. at 9-10). Security Counselor Monsen took photographs of the scene and of Plaintiff's injuries. (Id. at 12).

After an initial assessment by two registered nurses, Plaintiff was taken by wheelchair to the Main Building Health Services for further assessment.[3] (Id. at 8-10).

Security Counselor N. Johnson then called Assistant Office of Special Investigations ("OSI") Director Kenneth Stewart and informed him of the assault. (Id. at 16). Assistant OSI Director Stewart went to the Health Services area and interviewed Plaintiff, who informed him that he believed the assault by Jackson was the result of his sexual assault allegations against Jackson, allegations which were part of an active investigation. (Id.). Assistant OSI Director Stewart also interviewed Security Counselor J. Johnson, who related the events as set forth above.[4] (Id. at 17).

---

[3] These events were documented in Incident Reports written and signed by Security Counselor J. Johnson; Security Counselors Zuk, Madsen, Monsen, and N. Johnson; and Security Counselor Lead Olson; all of these Incident Reports were approved by Security Counselor N. Johnson. (Compl., [Docket No. 1], 6-14). In addition, Security Counselor Snedker wrote a related Incident Report, which was approved by Group Supervisor Andrea Kosloski. (Id. at 14-15). Security Counselor Olson's Incident Report specifically stated: "It is to be noted that [Plaintiff] was in the meeting [in the group room] and he and [Jackson] have an incompatibility." (Id. at 11). Security Counselor N. Johnson's Incident Report similarly noted that Jackson and Plaintiff "have a current incompatibility stemming from an allegation of sexual assault." (Id. at 14).

[4] Assistant OSI Director Stewart documented these events in an Incident Report which was later approved by Security Counselor N. Johnson. (Compl., [Docket No. 1], 16-17).

On the evening of February 26, 2015, Plaintiff approached Security Counselor Danna Anderson and asked her to contact OSI on his behalf. (Id. at 25). Shortly thereafter, Plaintiff met with Security Counselor Anderson and Security Counselor Keith Richards, and he told them that another MSOP client had approached him at dinner and reported that he had overheard a third MSOP client speaking on the phone and stating that "the first chance he gets he will beat Client Boots until he dies, or until he recants his allegations of sexual assault." (Id. at 25). Plaintiff told Security Counselors Anderson and Richards that he was afraid for his safety because he believed that the client who had been speaking on the phone was able to convince other MSOP clients to harm people. (Id. at 25-26). Security Counselor Anderson notified OSI.[5] (Id. at 25-26).

According to an Incident Report later filed by Security Counselor Lead Tammy Shelton, on March 29, 2015, Security Counselor Lead Shelton was changing a monitoring bracelet on a client[6] who began making comments toward Plaintiff, who was standing nearby. (Id. at 24). Specifically, the client stated: "'Hey, ask (name redacted in [Incident Report]) what's going to happen, lyin' about rape and shit like that. You will see what's going to happen.'" (Id. at 24). Security Counselor Lead Shelton asked Plaintiff if he felt safe, and Plaintiff responded, "'[Y]es, but I don't know for how long, or what (name redacted in [Incident Report]) will do,'" and he asked her to document the comments. (Id. at 24). Security Counselor Lead Shelton did so.[7] (Id. at 24).

On January 5, 2016, Plaintiff reported to Assistant Group Supervisor Kevin Carlson that Jackson had stared through a window at him and mouthed words at him, which Plaintiff believed

---

[5] Security Counselor Anderson documented these events in an Incident Report, which was later approved by Security Officer N. Johnson. (See, Compl., [Docket No. 1], 25-26).
[6] This client was possibly Jackson, but is not identified by name in the Complaint. (See, [Docket No. 1], 24).
[7] Security Counselor Lead Shelton wrote an Incident Report, which was approved by Group Supervisor Thorne M. Torgerson. (See, Compl., [Docket No. 1], 24).

4

violated a no-contact order Plaintiff had obtained through the State District Court in Carlton County, Minnesota. (Id. at 20). Assistant Group Supervisor Carlson informed Plaintiff that he could call the authorities and that Plaintiff could also contact OSI regarding the situation.[8] (Id. at 20-21). Plaintiff spoke with OSI Diana Magaard, and he told her that Jackson had been threatening to hurt him. (Id. at 21). Plaintiff also informed OSI Magaard that this had occurred in the past and he had reported it to staff. (Id. at 21). Plaintiff told OSI Magaard that he did not believe he was in imminent danger, but he wanted the courts to be aware of the events. (Id. at 22).[9]

The same day, Plaintiff also talked to Security Counselor Robert J. Gresczyk, and reported that Jackson had "glared" at him through a window and mouthed words at him. (Id. at 22). Security Counselor Gresczyk passed this information along to Security Counselor N. Johnson.[10] (Id. at 22).[11]

On August 23, 2017, Plaintiff initiated the present case by filing his Complaint in this Court. ([Docket No. 1]). Plaintiff named as Defendants in both their individual and official capacities: Security Counselor Nathan Johnson, Assistant Group Supervisor Kevin Carlson, Group Supervisor Richard O'Connor, Group Supervisor Thorne M. Torgerson, Behavior Analyst 2 Julie Rose, Group Supervisor Sara Kulas, Group Supervisor Andrea M. Kosloski, and Kevin Moser, the Facility Director at Moose Lake. (Id. at 1, 3-4). Plaintiff brings claims under 42 U.S.C. § 1983, claiming that Defendants violated his constitutional right under the Eighth and

---

[8] These events were documented in an Incident Report written by Assistant Group Supervisor Carlson and approved by Security Counselor N. Johnson. (See, Compl., [Docket No. 1], 20-22).
[9] OSI Magaard documented her interaction with Plaintiff in an Incident Report later approved by Security Counselor N. Johnson. (See, Compl., [Docket No. 1], 20-22).
[10] Security Counselor Gresczyk documented the events in an Incident report later approved by Security Counselor N. Johnson. (See, Compl., [Docket No. 1], 22).
[11] In his Complaint, Plaintiff also details another incident in which Jackson walked by outside a room in which Plaintiff was meeting with an MSOP clinician and "made some verbal gestures at him." (Compl., [Docket No. 1], 23). The Complaint does not indicate the date or timing of this interaction. (Id.).

Fourteenth Amendments to be protected from physical assault by another MSOP client and that Defendants failed to duly warn him about the threat of such physical harm by another MSOP client. (Id. at 26-27). Plaintiff seeks declaratory and injunctive relief, as well as, monetary and compensatory damages. (Id. at 27-28).

On November 27, 2017, Defendants filed their joint Motion to Dismiss Plaintiff's Complaint, [Docket No. 14]. Defendants ask the Court to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Mem. in Supp., [Docket No. 16], 3).

On November 28, 2017, the Undersigned issued an Order directing Plaintiff to file and serve his Response to Defendants' joint Motion to Dismiss by December 18, 2017, and directing Defendants to file their Reply Memorandum within 14 days of receipt of Plaintiff's Response and in any event no later than January 2, 2018. (Order, [Docket No. 21]).

On December 15, 2017, Plaintiff timely filed his Memorandum in Opposition to Defendants' joint Motion to Dismiss, [Docket No. 22], and he also filed a Motion for Additional Storage Bin, [Docket No. 23]. Defendants responded to Plaintiff's Motion for Additional Storage Bin on December 21, 2017, and they filed their Reply to Plaintiff's opposition to their joint Motion to Dismiss on December 29, 2017. Although the Court informed Plaintiff he would be allowed to file a Reply to Defendants' Response to Plaintiff's Motion for Additional Storage Bin, (see, Order, [Docket No. 29]), Plaintiff did not do so by the deadline set for such filing. Accordingly, the Court took both Defendants' joint Motion to Dismiss, [Docket No. 14], and Plaintiff's Motion for Additional Storage Bin, [Docket No. 23], under advisement upon the parties' written submissions as of Wednesday, January 3, 2018.

6

## II.    DEFENDANTS' MOTION TO DISMISS, [Docket No. 14]

Defendants now move the Court for dismissal for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mem. in Supp., [Docket No. 16], 3).

### A. Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a pleading for lack of subject matter jurisdiction, challenging the sufficiency of the pleading on its face or the factual truthfulness of its allegations. See, Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914-15 (8th Cir. 2015). When, as here, the moving party raises facial challenges, "'the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.' Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" See, Id. at 914 (quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990), and Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels

and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678-81.

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). Section 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983. "To recover under § 1983, a plaintiff must prove '(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of St. Paul, 679 F.3d 698, 704 (8th Cir. 2012).

### B. Analysis

As stated above, in the present case, Plaintiff brings claims under 42 U.S.C. § 1983, asserting that Defendants violated his constitutional right under the Eighth and Fourteenth Amendments to be protected from physical assault by another MSOP client and that Defendants

8

failed to duly warn him about the threat of such physical harm by another MSOP client. (Compl. [Docket No. 1], 26-27). The physical harm and assault upon which Plaintiff's claims hinge occurred on February 22, 2015. (See, Id. at 6-16; Mem. in Opp., [Docket No. 22], 10).

### 1. Eleventh Amendment Immunity

The Eleventh Amendment bars recovery of monetary damages from individual state officials alleged to have been acting in their official capacity. See, Hafer v. Melo, 502 U.S. 21, 25 (1991) (citations and quotations omitted) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."); Hadley v. N. Ark. Cmty. Tech. Coll., 76 F.3d 1437, 1438 (8th Cir. 1996) ("A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'"). The government and its officials are also immune from punitive damages under § 1983 because "considerations of history and policy do not support exposing a [state] to punitive damages for the bad-faith actions of its officials." See, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). In addition, the Eleventh Amendment bars § 1983 claims against a state and its officials because "[a] state is not a 'person' within the meaning of § 1983." See, Glasgow v. Nebraska, 819 F.3d 436, 441 n.5 (8th Cir. 2016).

Plaintiff will not be able to recover monetary relief (whether compensatory or punitive in nature) from the individual Defendants based on any of the claims alleged against them in their official capacities. Therefore, this Court recommends **dismissing with prejudice** all of Plaintiff's official-capacity claims against individual Defendants which seek to recover monetary damages.

By contrast, "suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." Fond du Lac Band of Chippewa Indians v. Carlson, 68 F.3d 253, 255 (8th Cir. 1995) (citing Ex Parte Young, 209 U.S. 123 (1908)). Therefore, Plaintiff's claims against individual Defendants in their official capacities which seek injunctive relief and declaratory judgment and his claims against individual Defendants in their individual capacities are considered next.

### 2. Claims against Defendants O'Connor, Torgerson, Rose, Kulas, Kosloski, and Moser

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Iqbal, 556 U.S. at 676)). Thus, to survive Defendants' current Motion to Dismiss, Plaintiff in the present case must have alleged each individually named Defendant's personal involvement in the asserted violations with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See, Twombly, 550 U.S. at 555.

Among others, Plaintiff has identified Richard O'Connor, Thorne M. Torgerson, Julie Rose, Sara Kulas, Andrea M. Kosloski, and Kevin Moser as Defendants in the present action. (Compl., [Docket No. 1], 1). However, the only specific factual allegations related to any of these Defendants are (1) that Defendant Torgerson approved an Incident Report in which Security Counselor Lead Shelton documented threatening comments made on March 29, 2015, by another MSOP client to Plaintiff, and (2) that Defendant Kosloski approved an Incident Report in which Security Counselor Snedker reported details surrounding the February 22, 2015, assault. (Id. at 14-15, 24). Plaintiff's Complaint alleges no other involvement by these individual

10

Defendants in the circumstances underlying his claims other than generalized, vague statements asserting that their "actions were willful, egregious, negligent and deliberate and as a result, Plaintiff was physically assaulted by another MSOP client" and that they "implemented, retained and carried out policies and procedures through the MSOP that violated Plaintiff's Fourteenth Amendment rights to be free from physical assault." (See, Compl., [Docket No. 1], 4-5). Plaintiff never further identifies those "actions" or "policies and procedures."

As already stated above, in order to state a claim upon which relief can be granted and withstand a Rule 12(b)(6) motion to dismiss such as the one presently before the Court, a Plaintiff must make factual allegations in his Complaint that are sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

With respect to Defendants Richard O'Connor, Thorne M. Torgerson, Julie Rose, Sara Kulas, Andrea M. Kosloski, and Kevin Moser, Plaintiff has failed to do so. Even liberally construing his Complaint, taking all facts alleged therein as true, and drawing all reasonable inferences in his favor, Plaintiff has made only vague and conclusory allegations unsupported by any specific facts and, as such, those allegations are insufficient to support Plaintiff's § 1983 claims against Defendants O'Connor, Torgerson, Rose, Kulas, Kosloski, and Moser.[12]

In addition, Plaintiff's argument in his Memorandum in Opposition to the present Motion that a theory of vicarious liability applies to mitigate his failure to allege personal involvement also fails. "'Supervisors . . . cannot be held vicariously liable under § 1983 for the actions of a

---

[12] To the extent that Plaintiff alleges additional facts in his Memorandum in Opposition to the present Motion to Dismiss to support the involvement of Defendant Rose, the Court notes that it generally may not consider materials outside the pleadings when deciding a motion to dismiss under Rule 12(b)(6), see, Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015), and that instead the Court must "look only to the facts alleged in the complaint," see, Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998).

subordinate.' 'To state a claim, the plaintiff must plead that the supervising official, <u>through his own individual actions</u>, has violated the Constitution." Beaulieu v. Ludeman, 690 F.3d 1017, 1030 (8th Cir. 2012).

Accordingly, the undersigned recommends **dismissing** without prejudice all of Plaintiff's claims against Defendants O'Connor, Torgerson, Rose, Kulas, Kosloski, and Moser in both their individual and official capacities for failure to state a claim upon which relief can be granted.

### 3. Defendant Carlson

Plaintiff also named Assistant Group Supervisor Kevin Carlson as a Defendant in the present case, and he alleged that he reported to Defendant Carlson on January 5, 2016, that Jackson had stared through a window at him and mouthed words at him, which Plaintiff believed violated a no-contact order Plaintiff had obtained through the State District Court in Carlton County, Minnesota. (Compl., [Docket No. 1], 20). In response, Defendant Carlson informed Plaintiff that he could call the authorities and that Plaintiff could also contact OSI regarding the situation. (Id. at 20-21).

Although Plaintiff characterizes this claim a violation of his rights under the Fourteenth Amendment, (Compl., [Docket No. 1], 1), his claim that the MSOP violated his civil rights by failing to protect him from being assaulted by another patient could be grounded either in substantive due process or in the Eighth Amendment, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment. See Hart v. City of Little Rock, 432 F.3d 801, 805 (8th Cir. 2005) ("Substantive due process does, however, require a state to protect individuals under two theories. First, the state owes a duty to protect those in its custody."); Sorenson v. Minn. Dep't of Human Servs., No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, *6 (D. Minn. Jan. 20, 2015) ("[A] prison official (or an employee at a state civil commitment

12

facility) may violate the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of harm from other inmates.").

> To plead deliberate indifference, a plaintiff must show both: (1) that, when viewed objectively, the alleged deprivation of rights was sufficiently serious; and (2) that the defendant, subjectively, had the requisite "culpable state of mind." The deprivation is sufficiently serious when the official's failure to protect results in the inmate being "incarcerated under conditions posing a substantial risk of serious harm." An official is deliberately indifferent when he or she *actually knows* of the substantial risk and *fails to respond reasonably.*

Id., at *6 (emphasis in original) (citations omitted).

Plaintiff's Complaint alleges no facts that would present a facially plausible claim on either of the two required showings. The only specific factual allegations in the Complaint which involve Defendant Carlson are in relation to events which occurred on January 5, 2016, which was well after the February 22, 2015, assault by Jackson. Even construing the Complaint liberally, taking all factual allegations in the Complaint as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to plead sufficient facts to support a plausible claim that Defendant Carlson's actions almost a year <u>after</u> the assault resulted in conditions at the MSOP which posed a substantial risk of serious harm to Plaintiff. Nor has Plaintiff pled sufficient facts to demonstrate a plausible claim that Defendant Carlson knew of the substantial risk to Plaintiff and failed to respond reasonably.

Accordingly, the Court recommends **dismissing** without prejudice Plaintiff's claim against Defendant Carlson in both his official and individual capacity for failure to state a claim upon which relief can be granted.

### 4. Defendant N. Johnson

The sole remaining Defendant in the action is Security Counselor Nathan Johnson. In his Complaint, Plaintiff has alleged that on the day of the assault, Defendant N. Johnson was

informed by Security Counselor J. Johnson that Jackson had stopped to stare at Plaintiff in a group room while Security Counselor J. Johnson was escorting Jackson through the facility. (Compl., [Docket No. 1], 9, 13). Defendant N. Johnson then alerted the RAC coverage and the A-Team as a precautionary measure. (Id. at 13). After the assault occurred, Defendant N. Johnson wrote an Incident Report about receiving the information from Security Counselor J. Johnson, and Defendant N. Johnson also approved the Incident Reports regarding the assault which were written by Security Counselors J. Johnson, Zuk, Madsen, and Monsen, and the Incident Report written by Security Counselor Lead Olson. (Id. at 6-14). Finally, Defendant N. Johnson reported the assault to Assistant OSI Director Stewart and he later approved Incident Reports related to the assault and/or to subsequent contact with Plaintiff written by Assistant OSI Director Stewart, Security Counselor Anderson, Defendant Carlson, OSI Magaard, and Security Counselor Gresczyk. (Id. at 16-17, 20-22, 25-26).

However, despite the greater number of facts alleged regarding Defendant N. Johnson, Plaintiff's Complaint fails to allege sufficient facts to present a facially plausible claim for deliberate indifference by Defendant N. Johnson. The only fact alleged as to Defendant N. Johnson which occurred prior to the assault is that Defendant N. Johnson took safety precautions when Security Counselor J. Johnson notified him of Jackson's actions while being escorted through the facility by Security Counselor J. Johnson prior to the assault. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure '"reasonable safety."'" Farmer v. Brennan, 511 U.S. 825, 844 (1994).

Even construing the Complaint liberally, taking all factual allegations in the Complaint as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to plead sufficient facts to support a plausible claim that Defendant N. Johnson's actions in notifying the RAC coverage and the A-Team as a precautionary measure did not constitute a reasonable reaction to the risk which Jackson posed to Plaintiff.

Accordingly, the undersigned recommends dismissing without prejudice Plaintiff's claims against Defendant N. Johnson—in both his individual and official capacities—for failure to state a claim upon which relief can be granted.

### III. PLAINTIFF'S MOTION FOR ADDITIONAL STORAGE BIN, [Docket No. 23]

Because the undersigned recommends dismissal of all of Plaintiff's claims against Defendants, the undersigned further recommends that Plaintiff's Motion for Additional Storage Bin, [Docket No. 23], be **denied as moot.**

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 14], be **GRANTED:**

    a. Plaintiff's claims against Defendants in their official capacities seeking monetary damages be **dismissed with prejudice;**

    b. All of Plaintiff's other claims against Defendants in their official and individual capacities be **dismissed without prejudice;**

2. Plaintiff's Motion for Additional Storage Bin, [Docket No. 23], be **DENIED as moot**; and

3. The action be dismissed.

Dated: January 23, 2018

Leo I. Brisbois
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).